Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Michael B. Hyman presiding, case number 23-0449, Peeble v. Jorge Velazquez. Good afternoon. I'm Justice Michael B. Hyman. With me is Justice Carl A. Walker and Justice Cecilia Amras. First, I want to apologize. We had a few technical difficulties, but we're all set. And hopefully we'll not have any further ones. But if we do, we'll take care of it. Each side has 20 minutes. Mr. Kelly, you get time for rebuttal. So while we start, introduce yourselves and for the appellant, tell me how much time you want to reserve. Good afternoon, Your Honor. My name is Liam Kelly. I represent Jorge Velazquez. I'm from the Illinois State Appellate Defender's Office, and I would like to reserve five minutes for rebuttal. Good afternoon, Justices and counsel. My name is Assistant State's Attorney Mary Hain, and I represent the people of the state of Illinois. Thank you very much. Mr. Kelly. Thank you. Good afternoon, Justices of the Sixth Division of the Illinois First District Appellate Court. If it may please the court. My name is Liam Kelly, and I represent Jorge Velazquez on his direct appeal of his conviction in this case. I have raised two arguments in my written briefs. My first argument is a claim that the trial evidence was insufficient to prove that Mr. Velazquez was guilty beyond a reasonable doubt. This reasonable doubt argument is thoroughly set forth in my written briefs. I am, of course, happy to answer any questions that you might have about my challenge to the sufficiency of the evidence. But with your permission, I would prefer to focus my remarks here today on my second argument. Please do. Thank you. That argument is that the trial judge engaged in an overall course of improper conduct in this case, which was so widespread and so prejudicial that it completely deprived Mr. Velazquez of any semblance of a fair trial. The judge's misconduct in this case was pervasive. It was intimidating. It was disruptive. It was capricious. It was frankly outlandish, and it went far beyond anything that could reasonably be deemed permissible within the judges. Mr. Kelly, Mr. Kelly, why wouldn't it be harmless, though? Tell us why it wouldn't. The state argues that it's harmless. Your Honor, also in corollary to my reasonable doubt argument, this evidence was not harmless and was not closely balanced. By all accounts, this amounted to a credibility contest between the witnesses. There were two prosecution witnesses. Now, those witnesses came into the courtroom with some credibility concerns in the first place. Those witnesses had made delayed outcries. Those witnesses had been vague in the details of their allegations, the time frame, how many times it had happened, the anatomical specificity that they were able to provide. When they did provide those outcries, it was in a joint outcry, which would have allowed for an argument that there was the possibility of joint fabrication. Details which they gave that the defense counsel was able to elicit from them in their limited ability to cross-examine were contradicted by witnesses, presented by defense witnesses. And then, so substantively, there were concerns in the first place. But then we come down to the errors. And the errors in this case affected, hopelessly frustrated the defendant's ability to examine the credibility of these witnesses. So when everyone agrees that this is a credibility contest based on the state's part, based on two witnesses whose credibility is being impeached, we can't then point to those witnesses and say that they amount to overwhelming evidence, that this determination that somehow they were credible is so overwhelming, when the defendant was not allowed an opportunity to examine that credibility, when that was the error that occurred. One, he was not allowed to examine that credibility properly and also did not get a fair determination about it at the end of the trial. Mr. Kelly, if it was so egregious as it was going on, were there objections being made at the time? Your Honor, with regard to preservation of the error, there was certainly an objection at the trial court level after the trial. There was a motion for a new trial. There was evidence presented in support of that at an evidentiary hearing with his testimony. But during the trial, nobody spoke up and said, you know, Judge, why are you in the jury box? Why aren't you sitting on your bench? Judge, do you mind backing up away from the witness? We don't have it in real time as to when this really happened, what the proximity was. I don't see evidence in the record as to the dimensions of the courthouse, what this court or the courtroom itself, what it looked like. They're not all created equal. Do we have any record of that in this case? I don't know that anyone made a record of the specific dimensions of the Maywood courthouse, although it's fairly widely known that it is smaller, albeit not in the record. Your Honor, my response to that has to be that I believe this error is rightly before the court. This error is certainly preserved for review in many respects. One, because that motion for new trial was filed. Two, because we're dealing with the conduct of a judge. This is exactly the type of situation that falls within the principle that those forfeiture principles should be relaxed. Even amongst equals, the kind of objections that you just described are somewhat contrary to our social norms. For someone to try to limit where someone else or criticize where someone else might stand or what someone else might say, that's difficult for someone to do in between equals. But when you're talking about the authority figure and the subordinate, when you're talking about the judge and the defense counsel, I think this is exactly the kind of scenario whereby that principle of the relaxation of forfeiture should apply is applicable. Also, the defense was the proponent of this evidence in the extent that this is cross-examining. These are avenues of cross-examination. So the defense wanted to make his record, wanted to explore the credibility of the witness. I'm not certain that he even had an obligation to raise those contemporaneous objections. If defense counsel did, it would have simply added to the prejudice. You're talking about an inability to conduct an orderly flow of cross-examination would have had to perhaps even reveal the endgame of his cross-examination, would have had to just hopelessly squander what little opportunity that counsel was able to salvage out of this. I do believe the error was close. I do believe the evidence was close on top of that. I do believe that the error was not harmless. So for all of those reasons, I believe that this error is appropriate for this court to reveal. So, Mr. Kelly, do this for me, then. Can you just kind of go through some of the problems that you believe occurred with the trial? We already know that the judge sat in the jury box so that the judge could look directly at the witnesses. We know that the judge asked nearly 200 questions of the witnesses. And so just maybe that was between all the witnesses. But just kind of walk through some of the issues that you believe happened here, the problems that the judge, the conduct of the judge. Well, it was difficult to get an exact count of what is a question because the judge just so thoroughly monopolized the entire back and forth and dialogue of this of this case. It simply it was a monologue by the judge. With the example that I want to raise. Most specifically, the one glaring example where the judge abandoned his role as a neutral neutral arbiter began to advocate on behalf of the state was when he interrupted defense counsel while impeaching a key prosecution witness about the fact that she had personally chosen. Mr. Velasquez described as her uncle George to serve as the honorary godfather at her quinceanera. The impeachment theory being that that would have been a highly unusual thing for an abuse victim to do after Mr. Velasquez had purportedly abused her. So, in addition to interjecting the possibility that it had been the parents of the witness who actually asked Mr. Velasquez instead of instead of the witness herself, the judge went on to prompt the witness to explain that had been her parents. Rather than herself who asked multiple other people to be the godparents that there were multiple other people who served as the godparents that she'd never called Mr. Velasquez her godfather that the role of the godparents was insignificant because it only involved paying for silverware and dishes for the event that the godparents were not required to participate in any formal ceremony, which is something that was contradicted later by defense witnesses. And that a photograph which depicted the witnesses, the witness alongside Mr. Velasquez during the event had been insignificant because all the other guests would have been invited to take photo. The point of every one of those questions by the judge was to diminish the role of Mr. Velasquez at this at this event. And then later on during that, it was it was pervasive through that and every other avenue of cross examination in this case. But specifically, I made a note to point to page 289 to 90 for the report of proceedings. The where the defense witness who is called to contradict the testimony of this key prosecution witness had testified that there was a there was a religious ceremony and that Mr. Mr. Velasquez did have an important role in that ceremony. The witness described a verbal commitment whereby Mr. Velasquez would, quote, take responsibility of taking the child along the right path in the event that that her parents experienced an untimely death. In response to this, the judge jumps in, he says, quote, they don't have to live with you. Unquote. But then right after that, as if the suggestiveness of that leading question wasn't explicit enough, the judge again says, they don't have to live with you, do they? And then he actually adds on the punctuating, he says, verdad. And then right after that, he says, you know, it, quote, it doesn't have to be your husband, does it? And then appends the word correcto. Which all is intended to suggest something that no one else had suggested, which is the idea that it would have been perhaps Mr. Velasquez's wife, not himself, who was actually expected to have an ongoing relationship with the witness. This reveals a level of bias in addition to just interrupting and disrupting the defendant's ability to cross examine the witness. Mr. Kelly, tell us. So, Mr. Kelly, tell us the role that Justice Underwood's decision in People v. Sprinkler, you believe, play in this case, our Supreme Court's decision written by Justice Underwood. Tell us how that case is helpful to us or what that case demands us to do, commands us to do. Your Honor, among my arguments that this error has been preserved, among my arguments that it's plain error, both prongs, among my arguments that didn't even need to preserve the error contemporaneously, that it was sufficient to do it with a motion for new trial. This is exactly the kind of conduct that we're talking about. Justice asked about the dimensions of the Maywood courthouse. This is non-speculative when I start to talk about the fact that the judge's behavior was intimidating and made people nervous. We have a witness at an evidentiary hearing of the motion for new trial who says that the judge's behavior was such that they felt nervous and they felt intimidated. At so many levels, I'm not certain what more we could expect from defense counsel in this situation. Also, the fact that he would have had to exacerbate the prejudice, would have had to squander what little ability cross-examination was afforded to him in order to speak up. But isn't it true that it would usually be the case at trial that witnesses would be nervous and feel intimidated by a judge? Didn't they admit the obvious, and is that enough to show prejudice? Well, the prejudice is, the nervousness is so relevant to so many issues. One, it's certainly relevant to what's commonly called the Sprinkle Doctrine, to the idea that judicial misconduct should involve a lesser threshold of preservation. It's relevant to my additional point, which is that the demeanor of the witnesses was not fairly determined by this judge, because we've got a judge that had now demonstrated bias. So in the circumstances of this case, when the judge becomes a prosecutor, particularly in the circumstances of this case where it is a credibility determination, then that prosecutor then becomes the person making the credibility determinations. And then it is a prosecutor who is finding the defendant. Someone standing in the role of a prosecutor who is abandoned the role as a neutral arbiter who is finding the defendant guilty. So that nervousness, that intimidation speaks to just the overall character of this conduct of what happened in this courtroom on that day. And we also have here that neither, none of the parties, and neither have we, found a case where a judge has actually gone into the well of the courtroom, whether, we haven't found any, they sat in the jury box, but went into the well of the courtroom and right up to and in front of the witnesses quite a bit and got very close to them and spoke to them and asked them questions. And some of them were pretty rapid questions. I feel comfortable. No cases like that. That is a unique and really unheard of situation, isn't it? Yes, Your Honor. And in combination with the abandonment of the neutral role, the word that comes to mind is outrageous what happened in this situation. It completely deprived Mr. Velazquez of an opportunity to have his fair day in court. So, I agree with that. All of that, I think, speaks to the reasons why relief is appropriate in this case. So, I asked you about the dimensions of the courtroom, and the record shows that the judge said, I would get up and get closer to the witness so I heard every word. If there was soft talking, I wanted to make sure I didn't miss anything. Do we have any record of how many times the judge moved from the jury box into the well in front of the witness? As I read this, it doesn't seem like the judge was in front of the face of every defense witness. It definitely happened. The judge admitted it. But was this just if there was a soft talker, or would it go back to the jury box? Is there a record? Not that I'm able to respond affirmatively to the way I understand that question. I am more concerned with the number of interruptions, the number of disruptions. There is language in some of the cases that I came across that cited that said, the actual disruptiveness itself can be a grounds for relief. Then, the fact that in combination with the disproportionality, the fact that they were disproportionately directed towards defense counsel and facts favorable to the defense, really does implicate that additional, that showing that bias in the nature. The fact that it interrupted cross-examination substantively in a way that counsel was not able to unring the bell. Counsel was not able to unpoison the well. His ability to make the record that counsel had every right to make was just destroyed. Your argument that the judge was rehabilitating the witnesses before the cross-examination even, or the direct examination of the defendant's witnesses was completed. There were circumstances where the judge interrupted questions in the middle of the question. There were circumstances where the judge interrupted the witness answering his own questions that he had asked. There were situations where the judge interrupted the witnesses when they're answering questions. It's been mentioned, and I expect it will be further mentioned, that there's some discretionary ability to clarify witness testimony. This is different. That's not what happened here. Explain in a few words why it's different here. In terms of that substantive nature of the questions, in terms of the abandonment of the neutral role, making a record, making a factual record on behalf of the prosecution and against the defense, and then the disproportionality. And then also the fact that judge created ambiguity in situations where there had not been ambiguity before. Judge interjected ambiguity into this by suggesting rehabilitative answers, which were contrary to unambiguous testimony that the defense witness had previously given. This was not clarification. It didn't serve that purpose, and it shouldn't be interpreted as such. What about the comment by the judge regarding some of the defense witnesses that they might be lying? This was before the trial was over, interjecting that on the record. There's so much in the record that I do not want my inability to, in sundry, to go out the laundry list of everything that was done to reflect that it's an exhaustive list of the examples that I saw or wrote about it in the brief, but that's one of so many. And it's the leading nature, it's the classic confrontational cross-examination nature of the way that the judge interrupted and asked questions of those defense witnesses, which is just as bad as the way in which he rehabilitated the state witnesses. Are there any other questions at this time? Okay, you still have your five minutes. Thank you. Ms. Hamm? Good afternoon. May it please the court, Assistant State's Attorney Mary Hain, on behalf of the people of the state of Illinois. The testimony of one credible victim that suffered multiple acts of penetration when she was under 13 was corroborated by the credible testimony of another witness who also was victimized by similar acts of sexual abuse. What we're talking about is the fair trial aspect. He's relied on his briefs with regard to the sufficiency argument, and that goes to sufficiency. What about what counsel just told us about all the serious problems that he's indicated with regard to whether the defendant got a fair trial? Yes, Your Honor. The defendant did receive a fair trial, and the trial court's questioning was not an abuse of discretion because his questioning was done in a fair and impartial manner. Well, it doesn't sound like it was fair and impartial when... Well, let's go through that. The victim, according to our count, and we've gone over... It's a very short trial, wouldn't you agree? It was over two days, not consecutive days, and it wasn't the whole day, and only a few hundred pages from what I could gather, reading the transcript several times. So, on direct, regarding the victim, this is substantive interruptions. He would interrupt with regard if he can't hear something, which is fine, and I'm not... There were several of those, but I'm talking about the substantive ones. For the victim, he interrupted 14 times. That is a judge on direct, and I cross on the victim 88 times. And with regard to the preponderance... Not preponderance, the propensity witness, it was almost even, 39 on direct and 38 on cross. In light of what you just said, it seems that he was heavy-handed on cross. Well, Your Honor, the number of the questions is not the dispositive analysis, because the analysis depends on the facts and the circumstances of the case. Obviously, Your Honor, just know that the issues with being able to hear well are well-documented, so... None of that is what I'm talking about. I'm talking about substantive. I've eliminated all those questions when he couldn't hear. Just so you have the full picture, with regard to the defendant witnesses, on direct, that is, when the defense counsel was asking questions, he asked questions of every single witness. 14 for 1, 13, 16, 21. And with regard to the cross, when the state was asking questions of the defense witnesses, 0, 0, 0, 0, 0, 22, 0. He asked none of the defendants. So only one witness did he ask any questions. He asked that witness 22, and that was the defendant's wife. Otherwise, he has no questions. So if you look at this, it's substantially helpful to the defense. I mean, excuse me, to the prosecution. He's interrupting many, many times with regard to the defense. Well, Your Honor, the first thing I would point out is for the seven witnesses that were defense witnesses, including the defendant, the five of them were not even cross-examined whatsoever by the state. So in those cases, the judge would not be interrupting the state because the state asked no questions. Part of the reason that the state asked... I mean, you know, he didn't, but he could have, considering his propensity. Well, and Your Honor, he did actually ask questions to Ivana Rosales, Mario Castillo, Norma Juarez, and Ivan Garcia. He did ask questions throughout the trial. I would say the person that he asked the least... Undirect, yes.  That's when the defense was up. That's right. So it just shows that when he was interfering more often than not, doesn't it? Judge, I wouldn't characterize it as interfering. I think the most appropriate word for what he was doing was clarifying. This is a trial that had more complications while it was a straightforward issue. There were a lot of issues because of the timeframe that was charged over six years. There were many times where the defense attorney was not able to lay a foundation for the questions that he was asking and was subjected to multiple objections by the prosecution, which the trial court actually did favor and give much leeway to the defense attorney in order to, I think, show deference or to give the defendant a fair trial. There were also, in this case, although there are cases with more witnesses, this case involved three generations and four, if you count the children of the victim, of relatives. When any of the witnesses were testifying, people are mixing up their names. They're mixing up V.S. versus J.C., the victim versus the propensity witness. The defense attorney many times started with the other person's name and then made it unclear. You're saying that if this was a jury trial, it would be totally appropriate what he did, too, right? It makes no difference whether it was a jury trial or a bench trial. What the judge did would have been, let's say, the judge did the exact same thing in a jury trial. Your argument would be the same, correct? No, Your Honor. I think if it was a jury trial, there would be some difference in that most likely the judge would call over the defense attorney in a sidebar. No, no, no. He didn't do that here. He didn't do that. He did it right out open. He just asked the questions. Why would he do that? I'm saying, is your argument the same if this was a jury trial? Your Honor, well, no, because he is the trier of fact as opposed to a jury. So many of the cases cited by defense are jury trials, which there is, well, a judge does still have to... But they do cite cases of bench trials. And it's a case-by-case basis, as you know, in a situation. And the jury can ask questions, but if they ask questions, they have to give the questions to the judge. And there's a process for that. But here we have the judge interjecting himself frequently into the proceedings. And if that was done in a jury trial, you're saying that would be different, but because of the bench trial, you're saying it's excused. Is that your argument? Your Honor, I'm saying that the risk of prejudice or the risk of infecting the trier of fact with the judge's own beliefs is greatly reduced in that he is the trier of fact. But that's not the issue. The issue is not affecting the trier of fact. The issue is whether the trier of fact was biased. That is, whether the judge's insertion of himself... For example, the Supreme Court in Sanducci said, error is committed when a judge exceeds his function by taking an excessive and unnecessary part in the proceedings. And in State v. Jackson, I think it's a 2011 case, the court said, a trial judge's questioning should rarely be extensive. And there's many other cases can be cited for those propositions, as you know, and they're cited in the briefs. So isn't that what we have here? And if it isn't, why not? Judge, it is not what we have here in that the judge is allowed to ask questions at any time. And the judge did ask many questions in this case. However, there's a purpose for the questions that the judge asked. Most of those can be characterized as clarification. As I was saying, Your Honor, the misuse of different people's names is one of the areas of clarification. Wouldn't that be the job of the state in many of these cases to do that? It wasn't his job. I mean, the counsel's trying to conduct either cross or direct examination and gets interrupted by the judge over and over again. And as a position not to irritate the judge or to object to a judge doing something would be kind of unheard of in the middle of a trial. I think we'd all understand why counsel waited to file the motion. I mean, the situation seems quite extraordinary. You agree it's extraordinary. I agree, Your Honor, that there is no case law on point saying that a judge went into the jury box to view the credibility of the witnesses. The judge stood up and because he said in order to observe, see their demeanor, he walked up to them. Right. That's what he said. And do we have any case where that ever happened? Judge, not that I'm sorry, Your Honor, not that I could find. However, it is common in a courtroom for when there's a video or audio or something like that, especially in a bench trial. We're not talking about a video and audio. And isn't it true when a jury is the trier of fact, they don't get up and stand in front of the witness and watch the demeanor, do they? No, Your Honor, they do not. But they are seated in a position where they can observe the face of the jury box. He can sit in any of those 12 chairs and you would agree that all 12 can see the jury box, wouldn't you? In every courtroom in Cook County. Yes, Your Honor. Yes. So he was in that jury box. So if he couldn't see from the, which I think all the judges have sat up there. I don't know if you've ever had to sit there where you can see you're right next to the witness. But let's just say that he wanted to sit in the jury box. So he didn't have to go up there and stand in front of them, did he? And he said he approached them many times. So we know that's indirect. He did say that he stood before each witness. But, you know, he also said that he was unable to hear some of their soft spoken testimony. At the times they were talking about. When he couldn't hear, he said and it was repeated. And don't forget, we also had an interpreter here. So, you know, there were other things and things were slow. I mean, he was upset with the pacing. And he mentioned that sometimes. Yes, but that was part of the part of the other reason that he gave in his ruling in the motion for a new trial for why he not only to observe the witnesses, but also because he wanted to be able to hear them and he wanted to understand every word that they said. So there are usually say, will you please speak up so I can hear? Isn't that the usual? They don't go and stand in front of the witness. I, you know, that happens quite frequently. Somebody will keep their voice low or the lawyer won't be able to be heard. Isn't that the proper way to do? And yes, your honor. And he did. He did ask to have people speak up to talk with a loud, open voice. He was interrupted himself by the court reporter and the interpreter at different times. I want to jump in real quickly because I just want to deal with a small hurdle that I believe we have here. And that is, I want you to respond to Mr. Kelly's argument that we should relax the requirement. To regarding not preserving the air. Because this was the judges conduct that we're referring to. So, and then, of course, you can get back to your dialogue with with this assignment, but I want to make sure that we kind of deal with that hurdle. Your honor, I would, I would note that one, there was not a objection, not even one during the entire trial by the defense attorney. And I would argue that this post trial motion. The paragraph 4 is the only one that addresses anything about questioning and it says the court and it's questioning of defense witnesses, intimidate them by its questioning and by leaving the bench and standing 3 to 4 feet in front of the witnesses. That is not preserving an impeded cross examination abandoning his role as a neutral arbiter. It does address the issue of the witnesses being intimidated. He brought that up, but but all of these other issues are being brought up on for the 1st time on appeal. They are related to questioning, but they're not. They're not enumerated in that motion. So, we have this unpreserved what you would argue to be unpreserved error, perhaps. And we have a situation here, though, where we're talking about in order to have preserved this and just as gamma raised it earlier. The defense counsel would have had to say to the judge judge, I object to you walking up on the jury object to you getting into the well, or I object to you even sitting in the jury box judge. Normally judges sit on the bench. So, and of course, anyone who's ever practiced law, but know how difficult that is to confront the judge with what you disagree with the judge about. So, do you the question becomes, do you believe that this is more like sprinkler people be sprinkler where justice Underwood wrote writing for the majority of the Supreme Court said that this kind of error should should be excused and that we should we should actually send this back when trial, even though the air was not preserved. Your Honor, I do not think that that sprinkle should apply here because, as stated in people being McLaurin by the Illinois Supreme Court in 2009. There's nothing to show that, that this, that the objection had fallen on deaf ears. He didn't even try once to object. He could have said judge I'd like a sidebar. I'm concerned that the witnesses are being intimidated I'm concerned, he, he, he didn't even try once it would be one thing if he tried a couple times and it's not working out but sprinkle was in in sprinkle the Supreme Court is talking about the risk of offending a judge or Looking bad in front of a judge at behest of the of your client in front of a jury, because the jury has esteem and sees value in judges in a way that it would Not work out well for them and for their clients, even if they were doing the best thing to protect their clients interest here in a in a bench trial. You know, if he would have even tried then then he would be able to say, hey, I tried, but it didn't work out right. I did my own kind of way of objecting or, you know, I asked for a sidebar, but he didn't do any of those things. And therefore, this, this is a issue that should be precluded from review. Going back to the questions that the court asked Unless there's any more questions on that, Your Honor. I'm done. The questions complained of independence brief. The one of them being when the and this was the incident you're talking about right now is the question that the judge asked. And that was when the defense attorney was first crossing the victim at that point. The victim had already acknowledged that she had said something different to the police officers and then she also acknowledged that she had said something different. A different number in her Recorded interview. After she said that is when the judge said, and this is the you're you're talking about the first incident now, which the defense is saying is a question for the purpose. I'm saying the defense is saying that the court is suggesting a plausible explanation. To the to the victim, but the victim had already acknowledged that. Yes, she did say something different. The victim then said after he said you're talking about the first incident. Now, right. That's when she said when when they asked me, I said five or six times I was talking about broad the whole time. He then says what And then she she answers. That is not the the judge. Eliciting an answer from from the victim. Many of his questions were to clarify something that seemed obscure. For example, the the the quinceanera questions. Those started off with the defense up for the first time on defense attorneys cross examination and he says you He was appointed to be your, your godfather and her answer is, yeah, I don't remember for what but yeah So the, the response that the victim gives to that question is what the judge is confused by and ask for clarification on if she would have just said yes or yeah we wouldn't be in the situation where the judges asking that clarification, which is fully within his right as a trial judge. He she then goes on to explain, we have different godfathers for many things. I don't remember what he was for. We had a godfather for sodas for plates, etc. So this is an area that seems obscure to the judge because he doesn't understand the quinceanera or what the point of a godfather We don't know if he doesn't understand it. He was asking. Right. That's right. So we don't know what it was in his mind. You would agree that demeanor was a important part of this decision by the court. Yes, judge the demeanor. Okay. Yes. So doesn't the trial court have a heightened duty to ensure that its conduct doesn't influence a witnesses demeanor. Yes, judge. The, the, the court should not affect the demeanor of the of the victims or the witnesses. In this case, though, Your Honor, there's nothing that proves that that did happen, including even on the motion for a new trial, you have only three of the seven defense witnesses that testified. Importantly, the defendant didn't testify. But you have of those three witnesses, you have Two that are basically just witnesses to Impeach or discredit the victim on a ancillary matter not going to the heart of the matter of whether this sexual abuse or sexual penetration occurred. Then you have his wife and his wife actually is the is the one that testified. That he was 15 feet away and she was he made her nervous, but she really didn't say much more about it than that. None of those three witnesses said that their testimony would be different and a part of credibility assessment beyond demeanor is also what the person's actually saying Testimony would have been different when they be perjuring themselves. They lied on the stand. I don't think so. If they Why is that, Your Honor. I mean, they testified under oath. Right, if, if, if they were saying that they when they testified under oath that they were coerced or frightened or intimidated to a level that caused them to change their testimony. I think that that would be an exception to perjury. But, you know, We're not talking about the necessity to change the testimony. We're talking whether there was a fair trial here. And that has to do with, as you just said, you know, that the demeanor is important in the judge shouldn't be doing anything that would Create Something that would influence it in a negative way. And he is interpreting their responses. Because that's what he said, I went up there. I looked him in the eye and he was interpreting how whether they were telling the truth or not, based upon their demeanor. And they said they were made more nervous. They felt intimidated. So in light of that, is that something we if we affirm What will happen. How would that affect the law in that this would permit judges to then go into the well and in order to go eyeball to eyeball with witnesses. Is that, is that okay now. Your Honor, the, the, the standard in which the review of this subject of whether the trial court Committed error by asking questions or asking questions from the well or or, you know, up, up at the stand is abuse of discretion. And in the definition of abuse of discretion. It's whether the actions of the judge were so unreasonable arbitrary fanciful where no reasonable person would take the view adopted by the court. Prejudice Excuse me. Isn't it prejudice, whether the judges conduct Prejudice there's a judicial misconduct. We're talking about. We're not talking about whether some judge might it might be something that Discretionary with a court. This is talking about judicial misconduct. And the question is, if the judges misconduct prejudice the defendants fair trial. Isn't that what we're looking at here. If your honor right if if the judges misconduct prejudiced the defendant, so that he didn't have a fair trial, then that would be a basis for and for a new trial. My question, where You were talking about is the first issue, which is a sufficiency. I agree with you. It's a different question. But here we're talking did this In fact, create an unfair trial as a result of the conduct of the court. And, and your honor, I would, I would say that the the questions that the that the trial court asked. Most of those questions did not elicit any Positive information or information that helped fill out any of the state's elements or their case. A lot of the questions were neutral. Their argument is, I understood it was the interruption of the defense attorneys train of thought his his timing his questions, what he was going to say next, the corporate ship, it would interrupt and interrupt so that he Couldn't It was he Couldn't proceed with their, their case, the way they had laid it out. And again, there was a huge number of questions asked of the witnesses for the defense and as opposed to and on on cross And your honor to the to the point of the defending complaining that his cross was being disrupted. When you look at the cross examination. Yes, it is true that there are many questions from the trial judge I would argue, most of those are are clarifications of the questions that are being asked. But even so, the defense attorney was still able to Confront the victim with her previous statements regarding the number of times she was penetrated or inappropriately touched. He was able to confront both But then that that goes to the issue of sufficiency, which we're not talking about. We're talking whether the disruption itself prejudice the presentation of the defense. And and you're under the reason that I'm bringing up the I'm going through what the defense attorney was able to do on cross examination. Importantly, even if you want to skip through all of the the confrontation and the questions that the defense attorney did ask both state witnesses. At the end of their testimony, or I'm sorry, at the end of his cross. It reflects that he said, I think that's all I have of this witness. So it wasn't that the judge cut him off and said, don't ask any more questions on this point. He was able to ask the questions that he wanted to ask what he did bring out was the continued affectionate greetings that both the victim and the propensity other crimes witness He confronted them both with those he confronted them both about their attendance at a family gatherings. He confronted the victim with the defendant being a godfather at her King senior. So he got out all the points that he wanted to make defendants brief. I think you're out of time. You want to sum up. Yes, I would just, Your Honor. I would argue that the defendant did receive a fair trial the questions that the judge asked had a purpose, they most of them were for clarification clarification of the questions, the unclear answers or the unclear questions that were being asked. And the, the testimony that was elicited from the questions the judge asked Did not benefit the state. And even if some of them could arguably be beneficial they that is also allowed and that does not make him a Advocate for the state or abandoning his role as a neutral arbiter based on that we ask that you affirm the judgment. Thank you very much, Mr. Kelly, if I've been You're on mute. Apologies. I'd first like to address the idea that any of this was ancillary or That it, it only matters if if his right to present a defense related to the actual elements of the conduct due to the nature of this case due to the nature of the state's choice of what evidence to present to do what evidence was available to them, the The credibility of these witnesses was the dispositive question at this case, the defendant took the witness stand in his own defense. He told his side of the story. He contradicted the allegations of The state's witnesses and therefore the credibility of those witnesses was the dispositive question in this in this matter. I'd like to address the idea that This these questions were intended to clarify or even perhaps Address the judges inability to hear the judge heard perfectly well with the witnesses answers were and that's why the judge responded in kind by at times at prompting the witnesses to try to attempt to get them to change their story or to ask questions which were very specifically Directed at the details of what they had just testified to for the purpose of diminishing their testimony. So he heard perfectly well he understood perfectly well what they'd said. There was what they said for the most part in those first foundational questions was unambiguous and it was the judge that was interjecting that ambiguity. And in closing, I'd like to address in relationship to Sprinkle and in relationship to the to the additional error of the judges credibility finding based upon The demeanor of the witnesses. That's why in this circumstance, the fact that was a bench trial is actually in many ways worse. The actual the inability the tainting the the cross examination the chanting the impeachment, the inability to ask unencumbered cross examination questions is the same, whether it's a jury trial or a bench trial. The additional problem that we have here is that the judge did abandon his role as a neutral arbiter. By asking those substantive questions by asking that disproportionate number of questions. We know that he abandoned as well as neutral arbiter and then that exact same person then went on to be the person making the credibility determination then went on to be the person. Rendering a finding of guilty. So that's why it's so problematic because then you had a prosecutor who was the person making the credibility determination. You had a prosecutor who was ultimately finding this person guilty or someone that had taken on that role as prosecutor. So in that context, it being a bench trial makes it in so many ways worse. And with that, I would Conclude my arguments and ask any questions, answer any questions that the justices might have No other questions. Want to thank both of you. Thank you for your briefs excellent arguments today. We appreciate it. It gave us much to think about. We'll take it under advisement and in due course in our, in our opinion. So thank you very much. Thank you, Your Honors.